UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL W. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:14-cv-508-WTL-TAB |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Michael W. White requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Mr. White's application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

## I. PROCEDURAL HISTORY

Mr. White protectively filed for SSI on March 28, 2011, alleging he became disabled on February 15, 2011. Mr. White's application was denied initially on July 5, 2011, and again upon reconsideration on September 15, 2011. Following the denial upon reconsideration, Mr. White requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, during which Mr. White was represented by counsel, was held before ALJ Daniel J. Mages on January 22, 2013.[1] The ALJ issued his decision denying Mr. White's claim on February 11,

---

[1] A hearing was also held on September 18, 2012. Because Mr. White was incarcerated and had no representative at the time, the hearing was postponed at Mr. White's request.

2013, and the Appeals Council denied his request for review on February 12, 2014. After the Appeals Council denied review of the ALJ's decision, Mr. White filed this timely appeal.

## II.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in her decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. <u>THE ALJ'S DECISION</u>

The ALJ determined at step one that Mr. White had not engaged in substantial gainful activity since March 28, 2011, the application date. At steps two and three, the ALJ concluded that Mr. White had the severe impairments of "cirrhosis of the liver, an adjustment disorder, anxiety, an intermittent explosive disorder, and substance abuse," R. at 12, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Mr. White had the residual functional capacity ("RFC") to perform light work defined as follows:

> Sitting six hours during an eight-hour workday; standing and walking four hours during an eight-hour workday; lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs; balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes or scaffolds; simple routine tasks with the ability to attend, concentrate and persist

for two hours at a time; and no more than superficial interaction with the public, coworkers or supervisors.

*Id*. at 19. Given that RFC, the ALJ determined that he could not perform any of his past relevant work. Finally, at step five the ALJ determined that Mr. White could perform a range of work that exists in the national economy, including work as a hand packer, equipment cleaner, and stock clerk. Accordingly, the ALJ concluded that Mr. White was not disabled as defined by the Act.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Mr. White's brief (Dkt. No. 14) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In his brief in support of his Complaint, Mr. White argues that the ALJ: 1) erred at Step Three in determining that he was not disabled due to his combined mental impairments; 2) erred in failing to call a medical advisor to testify as to medical equivalency; 3) erred in his credibility determination; and 4) erred at Step Five in determining that he was capable of performing some jobs. His arguments are addressed below.

### A. Listing 12.04

Mr. While first argues that the ALJ erred at Step Three[2] in finding that he did not meet or medically equal Listing 12.04; he also argues that the ALJ should have called a medical advisor to testify as to medical equivalency. The Court disagrees.

---

[2] Mr. White also asserts a host of other reasons the ALJ's Step Three decision must be reversed—the ALJ refused to consider evidence proving his case, the ALJ failed to build an accurate bridge from the evidence to his conclusion, the ALJ mischaracterized evidence, etc. *See* Pl.'s Br. at 13-14. These arguments are undeveloped and amount to nothing more than rote

4

Listing 12.04, affective disorders, require the satisfaction of paragraphs A and B or that the requirements in paragraph C are met.[3] The ALJ found that Mr. While did not meet or equal the requirements in paragraph B, which require at least two of the following: 1) marked restrictions of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, app. 1. A marked restriction means "more than moderate but less than extreme" and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id*.

In his decision, the ALJ found that Mr. White had moderate restrictions of daily living, noting that Mr. White could make simple meals, had appropriate grooming and hygiene, and engaged in recreational activities; the ALJ did note, however, that Mr. White lived with his mother, did not perform household chores, and had difficulties understanding recipes. R. at 16. The ALJ next found that Mr. White had moderate difficulties in maintaining social functioning, noting that he was cooperative, attended church intermittently, and had his friends drive him to his appointments; however, the ALJ noted that Mr. White reported difficulties getting along with other and did not handle stress well. *Id*. at 17. The ALJ found that Mr. White also had moderate difficulties with concentration, persistence, and pace, noting that he reported difficulties concentrating and completing tasks and did not manage his own finances. *Id*. at 17-18. Finally,

---

assertions supported by a string of case citations. The Court will not address such skeletal arguments. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

[3] Mr. White does not argue that he meets the requirements of paragraph C for Listing 12.04.

the ALJ noted that Mr. White experienced no episodes of decompensation of extended duration. Accordingly, the ALJ found that Mr. White did not meet or equal the requirements of paragraph B for Listing 12.04.

Turning now to Mr. White's arguments, he first argues that his Global Assessment of Functioning ("GAF") score of 45[4] proves he satisfies the requirements of paragraph B, as it indicates that he "was unable to keep a job and thus was totally disabled." Pl.'s Br. at 10. As this Court has previously noted, GAF scores, standing alone, do not automatically warrant a finding of disability or that a claimant equals a Listing. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)). The ALJ noted Mr. White's GAF score of 45, *see* R. at 21, and considered it as one piece of evidence. In so doing, the ALJ did not err.

Next, Mr. White argues that the ALJ "arbitrarily and erroneously rejected the 6-14-11 Psychiatric Review Technique evaluation prepared for Social Security by Dr. Johnson PhD." Pl.'s Br. at 11. Dr. Amy S. Johnson performed a Psychiatric Review Technique on June 14, 2011, opining that Mr. White had "Marked" limitations in activities of daily living and in maintaining social functioning. *See* R. at 291. She went on to note that Mr. White's "severity in functioning appears due to da/a [drug abuse and alcoholism]." *Id*. at 293. Dr. Johnson's findings were affirmed by Dr. Joseph A. Pressner on September 12, 2011. *Id*. at 309. The ALJ disagreed with these findings, as noted above, finding that the evidence only supported "Moderate" limitations in these two areas. The ALJ also correctly noted that the "Marked" findings made by

---

[4] Mr. White also notes that the ALJ arbitrarily and erroneously refused to accept his GAF scores of 37 and 50. *See* Pl.'s Br. at 10. The Court concurs with the Commissioner that the Record is void of these GAF scores; indeed, Mr. White provides no Record citation to them.

6

Dr. Johnson were "based on ongoing substance abuse, whereas the claimant insists he has not abused substances after March 2011. No objective evidence contradicts the claimant's allegations regarding his substance abuse." *Id.* at 22.

Mr. White argues that this rejection was erroneous because Dr. Johnson's evaluation occurred three months after he claims to have ceased his substance abuse. This argument is without merit, however, as Dr. Johnson explicitly stated that her findings were due to his drug abuse and alcoholism. Regardless, the ALJ clearly articulated the evidence that supported only "Moderate" limitations in these two areas, *see* R. at 16-18; the Court disagrees that the ALJ cited no "evidence to support his rejection of Dr. Johnson's findings." Pl.'s Reply at 4. The ALJ thoroughly explained his reasons for finding only "Moderate" limitations in activities of daily living and in maintaining social functioning, and those findings are supported by substantial evidence in the record. *See, e.g.*, Social Security Ruling ("SSR") 96-6p (noting that "Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists . . .").

Finally, Mr. White argues that the ALJ erred in failing to obtain a medical advisor to testify whether his impairments medically equaled Listing 12.04. In failing to do so, Mr. White argues that the ALJ improperly relied on his own layperson's opinion regarding the issue of medical equivalence. Again, the Court disagrees.

SSR 96-6p notes that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." The Seventh Circuit has noted that compliance with SSR 96-6p can be met with the Disability Determination and Transmittal Forms

("the Forms") and that the ALJ need not summon a medical expert to testify at the hearing if a medical expert has signed the Forms that address medical equivalency. *See Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989) (noting that the requirements were satisfied with regard to medical equivalency because two physicians signed the Forms and substantial evidence in the record supported the ALJ's determination that the claimant did not medically equal a listing); *see also Scheck*, 357 F.3d at 700 ("These forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely upon the opinion of these medical experts.") (internal citations and quotation marks omitted).

As the Commissioner correctly notes, the two Forms in the record indicate that Mr. White did not meet or medically equal any Listing because of his drug addiction and alcoholism. *See* R. at 58-60; *see also* 42 U.S.C. § 1382c(a)(3)(J) ("[A]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."). This is consistent with Dr. Johnson's finding that "da/a [drug abuse and alcoholism] is material[.]" R. at 293. The Court finds no error in the ALJ's failure to call a separate medical expert to testify at the hearing regarding medical equivalency.

### B. Credibility

Mr. White next argues that the ALJ's credibility determination was "patently erroneous" and "contrary to Social Security Ruling 96-7p." Pl.'s Br. at 17.[5] The Court disagrees. The

---

[5] Mr. White also argues, again, that the ALJ erred in rejecting Dr. Johnson's findings and in his consideration of his GAF score. These arguments have been addressed above.

ALJ's assessment addressed all of the following: Mr. White's symptoms, his daily activities, his purported functional limitations, the medications he took and other treatments he had received, the opinion evidence of State Agency doctors, and Mr. White's own statements. *See* R. at 19-22. The ALJ's credibility assessment fully complies with SSR 96-7p; it spans almost four pages and contains a thorough, detailed analysis of all relevant factors and opinions.

### C. Step Five

Finally, Mr. White argues that the ALJ's RFC assessment—which limited him to "simple routine tasks" fails to account for his mental impairments. The Court disagrees and finds that the RFC assessment and the hypothetical given to the Vocational Expert ("VE") fully account for Mr. White's mental limitations.

On June 2, 2011, Mr. White underwent a psychological evaluation performed by Dr. Andrew S. Davis. Dr. Davis offered the following opinions:

- The claimant may have some difficulty with [attending to a simple, repetitive task continuously for a two-hour period] secondary to reported difficulty with low energy and concentration as well as some difficulty with sustained attention;

- Psychological and cognitive functioning indicate that the claimant should be able to work at an appropriate pace;

- The claimant likely maintains the cognitive and psychological abilities to complete most simple job requirements.

R. at 279. At the January 22, 2013, hearing, therefore, the ALJ's hypothetical given to the VE included the following limitations: "this individual [is] limited to simple, routine tasks with the ability to attend, concentrate and persist for two hours at a time and no more than superficial interaction with the public, co-workers or supervisors[.]" *Id*. at 66. The VE then identified jobs that Mr. White could perform.

Thus, the hypothetical given to the VE and the RFC assessment accurately encompassed Mr. White's limitations. It is not analogous to the "unskilled work" limitation that the Seventh Circuit has cautioned does not fully address certain mental limitations. *See, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (noting that limiting the plaintiff to "unskilled work" did not fully address her difficulties in "maintain[ing] regular work attendance, [carrying] out instructions, and [dealing] with the stresses of full-time employment"). Here, the ALJ went beyond limiting Mr. White to "simple routine tasks" and imposed other restrictions, fully compatible with his mental limitations. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (upholding an ALJ's RFC assessment because he relied on a doctor who "went further and translated those findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"). In all, the Court finds no reversible error with the ALJ's RFC assessment or the hypothetical given to the VE.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 5/1/15

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification